IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| COLONY APARTMENTS-CHAPEL HILL, | * | |
| Plaintiff, | * | |
| v. | | Civil Action No. AW-00-1514 |
| | * | |
| ABACUS PROJECT MANAGEMENTS, INC., *et al.*, | * | |
| Defendants. | | |
| | * | |

* * * * *

## MEMORANDUM OPINION

This action involves a suit brought by Colony Apartments - Chapel Hill Limited Partnership ("Colony" or "Plaintiff")[1] against Abacus Project Management, Inc. ("Abacus") and Insignia Property Management ("AIMCO")[2] (collectively, "Defendants").[3] Currently pending before the Court is Abacus' Motion for Summary Judgment [44], AIMCO's Motion for Summary Judgment [55], Abacus' Motion to Strike [45], and Insignia's Motion to Strike [59]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Abacus' Motion for Summary Judgment and grant AIMCO's Motion for Summary Judgment. The Court will deny the respective motions to strike

---

[1]First State Holdings was initially involved in the transactions relating to the purchase of the Colony Apartments. Colony subsequently succeeded First State Holding's interest in the purchase of the complex.

[2]AIMCO succeeded Insignia Property Management's interest in this case.

[3]Plaintiff originally filed the instant action against Eichler, Fayne & Associates, as well as Abacus and AIMCO. However, Plaintiff voluntarily dismissed its claims against Eichler, Fayne & Associates on February 14, 2002. For purposes of this Opinion, only Abacus and AIMCO are referred to as "Defendants."

as moot.

## I.     FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. From July 17, 1990 through November 26, 1996, a 198-unit apartment complex located in Chapel Hill, North Carolina ("Colony Apartments") was owned by Colony Limited Partnership, a Balcor Company ("Balcor"). Until November 4, 1994, the Colony Apartments, under Balcor's ownership, were managed by Allegiance Realty ("Allegiance"). On November 4, 1994, Insignia Residential Group L.P. ("Insignia"), which later merged into AIMCO, took over the property management duties. From July 1995 through November 1996, William Peebles ("Peebles") was the Resident Manager of the Colony Apartment complex.

In 1996, Colony began investigating the purchase of the Colony Apartments complex, which was placed on the market for sale in the spring of 1996. Colony sought and eventually obtained funds for the purchase through a loan issued by Eichler, Fayne & Associates ("EF&A"), a mortgage underwriter.

A total of three visits were made to the Colony Apartments complex by Colony principles prior to Colony's purchase of the property. In July 1996 or August 1996, Michael Brodsky ("Brodsky") visited the property twice. During these visits, Brodsky viewed several units, reviewed property records, interviewed various residents, and spoke with Peebles and Hal Specter ("Specter"), the Maintenance Supervisor for the property. During one of these conversations, when Brodsky inquired as to any unusual repair issues, Peebles stated that the roof had been replaced, that exterior columns were in need of repair, and that all air conditioning systems would need to be replaced within two years. Peebles also gave Brodsky access to the records of the property, including ledgers, operating statements, and lease files. Additionally, in September 1996, Victor Rosenberg ("Rosenberg"), another Colony principal, visited the

property and discussed its condition with Peebles. Peebles indicated to Rosenberg that there were no major problems with the property, including no structural problems. At no time did Colony hire a building inspector or contractor to inspect the structural integrity of the Colony Apartments complex. However, Colony did conduct a "100%" walking inspection of the units.

On July 24, 1996, prior to closing, EF&A sent a letter ("Contract Letter") to Abacus, a company that performs physical assessments of properties, to conduct a Fannie Mae Delegated Underwriting Service Physical Needs Assessment ("Needs Assessment") for the Colony Apartment complex. This Contract Letter did not identify Colony as a recipient of the Delegated Underwriting Service Report ("DUS Report"), and indeed, did not mention Colony whatsoever. Additionally, EF&A has explained that it hired Abacus to produce the DUS Report for EF&A's own benefit, and not for the benefit of Colony.

Subsequent to July 24, 1996, EF&A and Abacus engaged in various conversations concerning the Needs Assessment. Specifically, on July 31, 1996, Kris Coffman ("Coffman") of EF&A sent a fax to Hugh Coyle ("Coyle") of Abacus stating, "Per our phone conversation, please address the above referenced report to Eichler, Fayne & Associates and First State Holdings, Inc."

On July 31, 1996, Abacus conducted a physical inspection of the Colony Apartments property. At this time, Alan Fordyce ("Fordyce"), the inspector, discussed the condition of the property with Peebles. Also during the physical inspection, Fordyce entered two or three crawlspaces. Fordyce did not observe any problems with these crawlspaces.

On August 2, 1996, Abacus delivered to EF&A the DUS Report, which assessed the physical condition of the Colony Apartments property. The DUS Report indicated, *inter alia*, that there were no significant structural defects in the Colony Apartments complex.

3

The cover page of the DUS Report also indicated, per Coffman's request, that the DUS Report was prepared for "Eichler, Fayne & Associates" and "First State Holdings." However, under the "Limitations and Qualifications" section of the DUS Report, it states:

> This report was prepared for the sole use of *Eichler, Fayne & Associates* and is subject to the terms and conditions contained in our contract and herein. No other person or entity may rely on this report without the prior written consent of Abacus Project Management, Inc.

All parties agree that Abacus did not give Colony written consent to rely upon the DUS Report pursuant to the above-referenced clause. Additionally, Colony did not pay Abacus for its preparation of the DUS Report.

On November 26, 1996, Colony purchased the Colony Apartments complex for a purchase price of $7.1 million. In doing so, Colony entered into an Agreement of Sale ("Agreement"). The Agreement states that Colony is purchasing the property "AS IS" and "WITH ALL FAULTS," and that "Purchaser acknowledges and agrees that it will be purchasing the Property ... based solely upon its inspections and investigations of the Property..." The Agreement further states that "Purchaser acknowledges that, except as may otherwise be specifically set forth elsewhere in this Agreement, neither Seller nor its consultants, brokers or agents have made any representations or warranties of any kind upon which Purchaser is relying as to any matters concerning the Property..."

In 1998, Colony discovered defects in the Colony Apartments complex, including serious water damage and related problems in some of the first floor units. Colony hired Bay Design, an engineering firm, to conduct a study concerning the overall structural integrity of the Colony Apartments complex.

In October 1999, Bay Design provided Colony with an engineering report (the "Bay Design

Report"), which concluded that the Colony Apartments complex suffered from major structural problems. Further, the Bay Design Report indicated that these structural problems were or should have been known by Abacus in 1996, when it prepared the DUS Report.

On May 24, 2000, Colony filed suit in this Court against Abacus, EF&A, and AIMCO. Specifically, Colony brought state law claims of professional negligence, negligent misrepresentation, and detrimental reliance/third party beneficiary against Abacus, based upon Abacus' failure to note the structural defects in the Colony Apartments complex in the DUS Report, and state law claims of negligent misrepresentation and fraudulent misrepresentation against AIMCO, based on AIMCO's failure to notify Colony of the structural defects in the property.

Defendants filed three motions in late 2001/early 2002: (1) a First Motion for Summary Judgment on the merits ("Motion for Summary Judgment"); (2) a Second Motion for Summary Judgment on statute of limitations grounds ("Second Motion for Summary Judgment"); and (3) a Motion to Strike and Exclude the Testimony of Plaintiff's Experts ("Motion to Strike"). On June 26, 2002, this Court granted the Second Motion for Summary Judgment on statute of limitations grounds and dismissed the two remaining motions as moot. On May 30, 2003, the Fourth Circuit Court of Appeals reversed, finding that this Court's determination that the question of when Colony received inquiry notice as to the structural damage was a question of fact for the jury, and remanded the case for further proceedings. *See generally Colony Apartments v. AIMCO Residential Group, L.P.,* 63 Fed.Appx. 122 (4th Cir. 2003).

On October 18, 2004, this Court granted Defendants' motion to revive those motions previously denied as moot, specifically, Defendants' motions for summary judgment and Defendants' motions to strike. On June 8, 2005, this Court denied Plaintiff's motion to file supplemental oppositions to Defendants'

renewed motions. As such, the instant motions are ripe for review, and the Court will now issue an Opinion.

## II.   STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. Pro. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.   ANALYSIS

### I.   Choice of Law

In tort actions, courts apply choice of law principles of the forum state. *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1052 (Md. Ct. Spec. App. 200). Maryland adheres to the *lex loci delicti* rule

in analyzing choice of law problems with respect to causes of action sounding in torts. *Id. Lex loci delicti* dictates that "when an accident occurs in another state [the] substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." *Id.* (internal citations omitted). As a general rule, the place of the tort is considered to be the place of injury. *Id.* Here, the place of the injury was North Carolina, which is where Colony purchased the Colony Apartments complex and where the alleged misrepresentations by Abacus and AIMCO occurred. Accordingly, the Court will apply North Carolina law to the instant tort claims.[4]

## II. Claims Against Abacus

### A. Count I — Professional Negligence, Count II — Negligent Misrepresentation

Colony's Complaint alleges two counts of negligence against Abacus; professional negligence and negligent misrepresentation. Abacus argues that, because it owed no duty of care to Colony, these negligence actions necessarily fail. The Court agrees.

In North Carolina, "the tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988).

---

[4]The Court notes that Colony does not dispute the application of North Carolina law to this case and, indeed, repeatedly cites to North Carolina precedent in support of its arguments. Additionally, with reference Colony's third party beneficiary action, which is a contract claim, although Maryland courts ordinarily apply the law of the jurisdiction where the contract was made, *Ward v. Nationwide Mut. Auto. Ins. Co.*, 614 A.2d 85, 88 (Md. 1992), it is unclear from the facts of the case as to where the contract was formed. Colony does not cite to any law in support of its third party beneficiary claim and Abacus provides the Court with analysis under both Maryland and North Carolina law. Accordingly, the Court will consider Colony's claim under both Maryland and North Carolina law.

In *Raritan*, the North Carolina Supreme Court set forth the standard for determining the duty of care owed by professionals to third parties. *Id*. at 617. There, third party creditors brought a claim of negligent misrepresentation against an accounting firm based upon incorrect information contained within an audit report prepared by the accounting firm for one of the third party's debtors. *Id.* The Court finds *Raritan*, which considers the duties owed by an accountant to third parties, analogous to the instant case.

The *Raritan* court considered the various approaches to third party liability taken by courts and adopted the position set forth in the Restatement (Second) of Torts. *Id.* Specifically, the *Raritan* court explained that the duty of care extends only to the "limited group" of persons that a professional knows will rely upon his conclusions: "If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them." *Id.* at 618. Additionally, "if the requisite intent is that of the client and not the accountant, then the accountant must know of his client's intent at the time the accountant audits or prepares the information." *Id.* However, a duty of care is not owed to anyone who might subsequently rely upon the professionals' findings. *Id.*; *see Camp v. Leonard*, 515 S.E.2d 909 (N.C. Ct. App. 1999). The *Raritan* court noted that this balance struck by the Restatement (Second) of Torts holds professionals accountable for their findings, but protects them from liability that "unreasonably exceeds the bounds of their real undertaking." *Id.*

In this case, the vast majority of the evidence indicates that, at the time it prepared the DUS Report, Abacus did not intend for Colony to rely upon the findings contained within the DUS Report, nor was Abacus aware that EF&A intended Colony to rely upon those findings. The Contract Letter did not mention Colony as a recipient of the DUS Report, nor is there any evidence of contemporaneous

8

conversations concerning such an arrangement. EF&A has itself stated that the DUS Report was not produced for the benefit of Colony. Colony did not pay for the DUS Report, nor did it discuss the preparation of the DUS Report with Abacus.

Colony's sole piece of evidence supporting its contention that it was owed a duty of care by Abacus is that its name appeared on the cover pages of the DUS Report, apparently at the request Coyle. However, the DUS Report itself clearly states that it was prepared for the "sole use of *Eichler, Fayne & Associates*" and that "[n]o other person or entity may rely on this report without the prior written consent of Abacus Project Management, Inc." Colony concedes that it did not, at the time it received the DUS Report or at any time thereafter, obtain the written consent of Abacus to rely upon the DUS Report. Considering all of the evidence, the Court finds that no reasonable fact finder could conclude that Abacus or EF&A intended for Colony to rely upon the DUS Report. Indeed, to find that Abacus owed Colony a duty of care would subject Abacus to liability that unreasonably exceeds the bounds of its true undertaking. Accordingly, the Court will grant summary judgment in favor of Abacus.

### B.    Count III — Detrimental Reliance / Third Party Beneficiary

Colony's Complaint alleges that Colony relied upon the DUS Report produced by Abacus to Colony's detriment. Abacus argues that, because Abacus owed no duty of care to Colony, the negligence actions necessarily fail, and moreover, Colony's third party beneficiary claim is without factual support. The Court agrees.

North Carolina does not recognize detrimental reliance as an action of recovery by a third party. *Lee v. Paragon Group Contractors, Inc.*, 337 S.E.2d 132, 136 (N.C. Ct. App. 1985) ("While our courts have recognized the doctrine of promissory estoppel to some extent, under the current state of the

law only the promisee may assert promissory estoppel as a substitute for consideration."); *see Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 358 S.E.2d 539, 542 (N.C. Ct. App. 1987) ("North Carolina case law has not approved the doctrine [of detrimental reliance] for affirmative relief."). Thus, Colony's detrimental reliance claim fails under North Carolina law.

Count III of Colony's Complaint also raises the issue of third party beneficiary recovery. Third party beneficiary is a theory of recovery based in contract, not tort, law. As such, in order to succeed on a third party contract theory, a plaintiff must show: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Leasing Corp. v. Miller*, 263 S.E.2d 313, 317 (N.C. Ct. App. 1980). Similarly, under Maryland law, "[i]n order for a person to recover as a third party beneficiary, he or she must show that the parties to the contract clearly intended that the third party benefit from it." *Parlette v. Parlette*, 596 A.2d 665, 670 (Md. Ct. Spec. App. 1991).

As an initial matter, Colony's Complaint fails to specifically identify the contract upon which its third party beneficiary claim is based. Assuming, however, that Colony is referencing the contract between EF&A and Abacus for Abacus to provide EF&A with the DUS Report, for the aforementioned reasons, the Court finds that the contract was not entered into for the benefit of Colony. Indeed, the Contract Letter does not mention Colony whatsoever, and even stretching credulity to its limits, Colony could only be regarded as an incidental beneficiary of the contract. As such, the Court will grant summary judgment in favor of Abacus as to Count III of Colony's Complaint.

### III. Claims Against AIMCO

#### A. Count V — Negligent Misrepresentation

AIMCO argues that it should be granted summary judgment as to Colony's negligent misrepresentation claim because (1) Colony cannot demonstrate that AIMCO owed a duty of care to Colony, and (2) Colony was not justified in relying upon the statements of Peebles as to the structural condition of the Colony Apartments complex. The Court agrees and will grant summary judgment in favor of AIMCO.

As noted previously, under North Carolina law, "the tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan*, 367 S.E.2d at 612. "An action in fraud for misrepresentations regarding realty will lie *only* where the purchaser has been fraudulently induced to forego inquiries which he otherwise would have made." *Libby Hill Seafood Rests., Inc. v. Owens*, 303 S.E.2d 565, 568 (N.C. Ct. App. 1983). However, where "the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in fraud will not lie." *Id.*; *see C.F.R. Foods, Inc. v. Randolph Dev. Co.*, 421 S.E.2d 386, 389 (N.C. Ct. App. 1992).

In *Libby Hill*, the North Carolina Court of Appeals found that generalized representations about the fitness of the subject property by the commercial purchaser were insufficiently definite to form the basis for a negligent misrepresentation suit, where the property was subsequently found to contain defects. *Id.* In finding that the plaintiff was unreasonable in relying upon the purchaser's statements and not pursuing the issue further, the court explained that the purchaser, "[did not] have peculiar knowledge of the facts. He was, as plaintiff well knew, a real estate professional, not a contractor, builder, soil engineer, or gas barrier installer." *Id.* Thus, because the alleged misrepresentations were "no more than the expression of [the purchaser's] opinion, we conclude they certainly do not rise to the level of affirmation of fact or

11

promise required for the creation of an express warranty." *Id.* (internal citations omitted).  Here, too, the statement of Peebles that there were no major problems with the property, structural or otherwise, was merely an expression of his opinion based on his experience with the property — not the definite representation of a contractor or structural engineer.  As such, Colony's negligent misrepresentation claim fails.

Moreover, Colony has failed to demonstrate reasonable reliance.  As in *Libby Hill*, here, Colony cannot show that it was reasonable for it to rely upon the generalized representations of a property manager as to the structural integrity of a building that Colony was purchasing for 7.1 million dollars.  The *Libby Hill* court explained that, "[t]he right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him.  The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." *Id.* at 569.  Here, Colony was on equal footing with AIMCO and was unreasonable in relying upon AIMCO's statements.  For all of these reasons, the Court will grant summary judgment to AIMCO as to Colony's claim of negligent misrepresentation.

### B.     Count VI — Fraudulent Misrepresentation

To prove a claim of fraudulent misrepresentation, the party asserting it must show (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Taylor v. Gore*, 588 S.E.2d 51, 54 (N.C. Ct. App. 2003).  A defendant cannot be liable for concealing or falsely representing a fact of which it was unaware. *Id.*  Moreover, as a general rule, "the mere expression of an opinion or belief, or more precisely, a representation which is nothing more than the statement of an

opinion, cannot constitute fraud." *Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.*, 127 S.E.2d 759, 761 (N.C. 1962).

For the reasons articulated above, the Court finds that Peebles' statements concerning the structural integrity of the Colony Apartments complex are mere expressions of opinion and belief, and therefore cannot form the basis for a fraudulent misrepresentation claim. Also for the reasons previously stated, the Court finds that Colony cannot show that it reasonably relied upon the statements of Peebles, who was not a structural engineer, or that Colony was owed a duty of care by AIMCO, which is necessary to sustain a fraud claim. *See Computer Decisions, Inc. v. Rouse Office Mgmt., Inc.*, 477 S.E.2d 262, 265 (N.C. Ct. App. 1996). Additionally, Colony has not demonstrated that AIMCO was actually aware of the structural problems with the Colony Apartments at the time Peebles made the statements in question. As such, the Court will grant summary judgment in favor of AIMCO as to Colony's fraudulent misrepresentation claim.

## IV.     CONCLUSION

For all of the aforementioned reasons, the Court will grant Abacus' Motion for Summary Judgment [44] and grant AIMCO's Motion for Summary Judgment [55]. Thus, the Court need not reach the motions concerning expert witnesses and will deny as moot Abacus' Motion to Strike [45] and AIMCO's Motion to Strike [59]. An Order consistent with this Opinion will follow.

<u>August 30, 2005</u>                                                         <u>         /s/              </u>
Date                                                                        Alexander Williams, Jr.
                                                                            United States District Court